**Golda A. LYONS, Petitioner,**

v.

**The MILLERS CASUALTY INSURANCE COMPANY OF TEXAS, Respondents.**

**No. D–0664.**

Supreme Court of Texas.

Dec. 8, 1993.

---

Brian D. Bethune, Dallas, Christine Karol Roberts, Newport, CA, Steve Sumner, Webb F. Joiner, Jr., Dallas, for petitioner.

Scott Patrick Stolley, Dallas, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, ENOCH and SPECTOR, Justices, join.

This case presents us with the opportunity to clarify the method by which Texas courts should conduct legal sufficiency review of factfindings of bad faith against an insurer. After a windstorm, Golda Lyons submitted a claim to Millers Casualty Company, her homeowner's insurance carrier, for damage to the brick veneer and outside back staircase of her house. Following an investigation, Millers denied Lyons' claim. Lyons sued for breach of contract and of the duty of good faith and fair dealing. The essence of this controversy is that while Lyons claims the damage to her house was caused by the windstorm, a covered peril, Millers claims that it was caused by settling of the foundation, an excluded peril. Because we hold that there is no evidence to support the bad faith judgment for Lyons under the substantive test we adopted in *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 213 (Tex.1988), we affirm the judgment of the court of appeals. 798 S.W.2d 339.

Lyons testified at trial that during a storm on April 29, 1984, she heard something banging on the outside of the house. She later discovered that bricks within the external veneer were cracked and loose and that the back staircase was standing "out of kilter." According to Lyons and two of her neighbors, this damage did not exist before the storm. The storm also knocked over a hack-

berry tree in Lyons' yard, which had fallen perpendicular to and away from the residence. Another hackberry tree, located inches from the damaged staircase, remained standing.

After Lyons submitted her claim to Millers, Hal Benoy, an adjustor for Millers, and Charlie Herman, a reconstruction expert hired by Benoy, inspected the house. Herman concluded that the damage was not caused by the storm, but rather by settling and shifting of the foundation. He based this conclusion on several cracks he found in the foundation and the absence of any indication of impact between a tree and the house. Herman also noted that the wood in the staircase was rotted. Millers denied the claim five days after receiving Herman's written report, less than one month after the storm.

When Lyons protested the denial of her claim, Millers dispatched Clyde Hardy, a registered professional engineer specializing in damage and failure analysis, to reinspect the property. Hardy's conclusions were identical to Herman's. He likewise noted the existence of numerous cracks in the foundation, indicating settling and shifting, and the absence of any evidence of contact between a tree and the house. On October 5, 1984, based on Hardy's report, Millers again denied Lyons' claim.

In August 1985 Lyons hired Marcus Avila, an architect and resident engineer with Trinity Construction Materials, to inspect the property. By the time of Avila's inspection, the staircase had collapsed following a second storm on March 28, 1985. Avila concluded that the original damage to the staircase and the brick veneer had been caused by the April 1984 storm. He theorized that the surviving hackberry tree located near the staircase, rather than the one found laying on the ground, struck the house during the first storm, causing the damage.

In February 1986 Lyons sued Millers for breach of contract, violation of the Texas Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code, and breach of the duty of good faith and fair dealing. A jury found that one-quarter of the structural damage to the house was attributable to the windstorm, three-quarters was attributable to settlement of the structure, and that $25,000 was the reasonable cost to repair the residence. The jury further found that Millers violated the DTPA, and breached its duty of good faith and fair dealing in failing to pay Lyons' claim, awarding an additional $75,000 in damages for those claims, plus exemplary damages of $8,700. The trial court rendered judgment on the verdict for $89,950, plus pre-judgment interest and attorneys' fees.

On appeal, the court of appeals determined that there was no evidence of a breach of the duty of good faith and fair dealing or a violation of the DTPA; it therefore rendered a take-nothing judgment on those claims.[1] Lyons complains here of the court of appeals' conclusion that no evidence supports the jury's finding of bad faith.

We first recognized an insurer's tort duty of good faith and fair dealing to its insured in *Arnold v. National County Mutual Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987), in which we stated:

> A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is *no reasonable basis* for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.

*Id.* at 167 (emphasis added). That duty arises from the special relationship between

---

1. The court of appeals did find legally and factually sufficient evidence to support the jury's finding that 25% of the damage was attributable to the windstorm, but nonetheless reversed and remanded the contract claim because of the submission of an erroneous jury issue. Question two asked the jury to determine the percentage of damage caused by windstorm and the percentage caused by "settlement of structure." The court of appeals concluded that the question should have been submitted in terms of the policy exclusion, which excluded losses not only from settling but from "settling, cracking, bulging, shrinkage, or expansion of foundations." The court also determined that question two did not properly place the burden of proof on Lyons to prove that the damage was not caused by foundation problems. 798 S.W.2d at 345. Lyons has not challenged these determinations.

the insurer and the insured resulting from the insurer's disproportionately favorable bargaining posture in the claims handling process.

■ A year later, in *Aranda v. Insurance Co. of North America*, we said that to establish an insurer's liability for the tort of bad faith the insured must prove:

(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

748 S.W.2d 210, 213 (Tex.1988) (emphasis in original).[2] We also distinguished the insurer's liability under the contract of insurance from the insurer's liability for the tort of bad faith. "[C]arriers," we stated, "will maintain the right to deny invalid or questionable claims and will not be subject to [bad faith] liability for an erroneous denial of a claim." *Id.* In other words, if the insurer has denied what is later determined to be a valid claim under the contract of insurance, the insurer must respond in actual damages up to the policy limits. But as long as the insurer has a reasonable basis to deny or delay payment of the claim, even if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith.

Appellate review of the legal sufficiency of the evidence supporting a judgment for the insured in a bad faith case, however, presents unusual problems. Primary among these is the conundrum of a reviewing court scouring the record to evaluate an insurer's claim that there is "no evidence" of a negative fact, that is, that the insurer had no reasonable basis to deny or delay payment of a claim.

The traditional statement of the standard of review for legal sufficiency requires a court to consider only the evidence favoring the judgment for the insured and to disregard all evidence to the contrary. *See, e.g., Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*,

24 ST.MARY'S L.J. 1045, 1133 (1993); William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEXAS L.REV. 515, 522 (1991); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361, 362–63 (1960). Our courts of appeals have struggled to reconcile the insurer's substantive rights under the *Aranda* test and the traditional statement of the no evidence standard of review. *See State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 283 (Tex. App.—San Antonio 1992, writ denied) (surveying cases and noting "confusion about the proper approach for assessing the legal sufficiency of a bad faith finding").

■ As this case demonstrates, we believe that when a court is reviewing the legal sufficiency of the evidence supporting a bad faith finding, its focus should be on the relationship of the evidence arguably supporting the bad faith finding to the elements of bad faith. The evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim, and that it knew or should have known it had no reasonable basis for its actions. *See Pittman v. Baladez*, 158 Tex. 372, 312 S.W.2d 210, 216 (1958). The evidence must relate to the tort issue of no reasonable basis for denial or delay in payment of a claim, not just to the contract issue of coverage. This is nothing more than a particularized application of our traditional no evidence review. This focus on the evidence and its relation to the elements of bad faith is necessary to maintain the distinction between a contract claim on the policy, and a claim of bad faith delay or denial of that claim, which arises from the tort duty we imposed on insurers in *Arnold* and *Aranda*.

The evidence offered by Lyons in support of the bad faith finding consisted of Avila's opinion that the windstorm caused the damage, and the testimony of Lyons and her neighbors that the brick veneer and staircase

---

**2.** This case was tried under the *Aranda* formulation of the bad faith test, and we therefore restrict our analysis accordingly.

were visibly damaged after the storm. This evidence supports the jury's finding that Lyons' damage was caused in part by the wind, and therefore her claim was covered by the Millers policy. In other words, Millers was mistaken as to its contract liability. The jury was entitled to resolve the conflict between Lyons' evidence that the windstorm caused the damage and Millers' evidence that the settling of the foundation caused the damage. If the jury concluded that the former is more credible, and some evidence supports that finding, our inquiry as to contractual liability is concluded.

■ But the issue of bad faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim. Evidence of coverage might in some circumstances support a finding that an insurer lacked any reasonable basis for denying a claim, for example, when the insurer unreasonably disregards the evidence of coverage. In this case, however, Lyons offered no evidence that the reports of Millers' experts were not objectively prepared, or that Millers' reliance on them was unreasonable, or any other evidence from which a factfinder could infer that Millers acted without a reasonable basis and that it knew or should have known that it lacked a reasonable basis for its actions. In contrast, Miguel Aranda pleaded not only facts supporting coverage, but also alleged that the insurance companies ignored their own adjusters' advice to pay his claim. *Aranda*, 748 S.W.2d at 213–14. Under the rule established in *Aranda*, Millers could deny Lyons' claim without exposing itself to a bad faith judgment if it reasonably relied on expert reports indicating her loss was not caused by a covered peril, even though its liability on

the insurance policy was ultimately established. Focusing on the specific elements that must be proved to support a finding of bad faith and the evidence offered to support that finding, we agree with the court of appeals that there is no evidence that Millers had no reasonable basis to deny payment of Lyons' claim.[3]

■ By cross-application Millers contends that the court of appeals should have rendered judgment in its favor on the contract claim allegedly because there was no evidence providing a basis for the jury to allocate the damage between the storm and structural problems. When covered and excluded perils combine to cause an injury, the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage. *Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex.1965). Millers asserts that Lyons failed to provide such evidence, as her expert admitted the "likely" presence of some preexisting damage and that determination of the extent of storm-related damage would be "very hard." Expert allocation of damages between covered and excluded risks is not, however, necessarily required; circumstantial evidence can suffice. *See United States Fidelity and Guar. Co. v. Morgan*, 399 S.W.2d 537, 540 (Tex. 1966). The testimony of Lyons and her neighbors that there was no preexisting damage to the staircase or brick veneer constituted some evidence of the extent of damage attributable solely to the windstorm.

As additional grounds for rendition, Millers relies on the court of appeals' determination that the charge improperly instructed the jury on allocation of the cause of the damage[4] to support its assertion that the

---

3. Evidence that (1) the claims adjuster refused to speak to Lyons *after* an investigator was sent out and the claim was denied, and (2) the adjuster did not interview her neighbors, does not amount to more than a scintilla of evidence supporting bad faith. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983) ("when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence"). The testimony of her neighbors was cumulative of Lyons' own opinion that damage was visible after the storm. The adjuster's refusal to speak

to Lyons after the claim was denied the first time is not behavior we condone, but does not support an inference that Millers' acted unreasonably in denying the claim based on Herman's report.

4. Question two asked the jury to determine the percentage of damage caused by the windstorm and the percentage cause by "settlement of structure." The court of appeals determined both that the question should have been submitted in terms of the more precise language of the policy exclusion and the burden of proof should have been placed on the insured to show that the damage was not caused by foundation problems.

erroneous submission constituted a waiver of Lyons' contract claim. We agree with the court of appeals that the appropriate disposition is remand rather than rendition.

Accordingly, we affirm judgment of the court of appeals.

DOGGETT, Justice, joined by HIGHTOWER and GAMMAGE, Justices, dissenting.

When an unequivocal constitutional command and concern for the insurance industry collide in this Court, the outcome is no longer in doubt.[1] Since 1891, the Texas Constitution has required that "the decision of the [courts of appeals] shall be conclusive on all questions of fact brought before them on appeal or error." TEX. CONST. art. V, § 6. This provision "restrict[s] in express terms, the jurisdiction of the supreme court, and ... confine[s] it to questions of law." *Choate v. San Antonio & A.P. Ry.*, 91 Tex. 406, 44 S.W. 69, 69 (1898); *see Coulson v. Lake LBJ Municipal Utility Dist.*, 781 S.W.2d 594, 597 (Tex.1989) (acknowledging that this Court has no jurisdiction to undertake factual sufficiency review); *Gulf, Colorado & Santa Fe Ry. Co. v. Deen*, 158 Tex. 466, 312 S.W.2d 933, 937–38 (1958) (Supreme Court cannot conduct factual sufficiency review); *Wilson v. Wilson*, 145 Tex. 607, 201 S.W.2d 226, 227 (1947) ("Supreme Court is not invested with the power to determine facts"); *see also* W. Wendell Hall, *Revisiting Standards of Review in Civil Appeals*, 24 ST.MARY'S L.J. 1045, 1139 (1993) (constitutional "provision ... acts as a limitation on the judicial authority of the supreme court and confines its jurisdiction to questions of law.").

In compliance with the Constitution, this Court, in determining a "no evidence" point,

"must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences." *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992); *see Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914). If more than a scintilla of such evidence exists, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Although jurors are empowered to evaluate qualitatively the credibility and weight of some evidence and conclude that it constitutes no evidence, the Texas Constitution precludes this Court from performing that task.

Today's opinion changes all that by announcing a new rule, previously unknown in a no evidence review:

> when a court is reviewing the legal sufficiency of the evidence supporting a bad faith finding, its focus should be on the relationship of the evidence arguably supporting the bad faith finding to the elements of bad faith.

866 S.W.2d at 600. This seemingly innocuous pronouncement is a device by which this Court can circumvent the Constitution to consider the credibility and weight of the evidence, something known until now only by its true name—a factual sufficiency review. Disguising its work as "nothing more than a particularized application of our traditional no evidence review," the majority cites as its sole authority *Pittman v. Baladez*, 158 Tex.

---

798 S.W.2d at 345. As Lyons does not challenge these conclusions in her application for writ of error, we consider neither.

**1.** Today's opinion is but one example of the Court's recent indifference to precedent and its commitment to wholesale revision of Texas law. *See, e.g., General Motors Corp. v. Saenz*, 1993 WL 483479 *9 (Tex.1993) (Doggett, J., dissenting); *C & H Nationwide, Inc. v. Thompson*, 1993 WL 483450 *18 (Tex.1993) (Doggett J., dissenting); *Dresser Industries, Inc. v. Lee*, 1993 WL 433292,

37 Tex. Sup.Ct.J. 67, 75 (Tex. October 17, 1993) (Doggett, J., dissenting); *Ruiz v. Conoco*, 868 S.W.2d 752, 760 (1993) (Hightower, J., dissenting on rehearing); *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 195 (Tex.1993, orig. proceeding); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 n. 10 (Tex.1993); *Boyles v. Kerr*, 855 S.W.2d 593, 595–96 (Tex. 1993); *Walker v. Packer*, 827 S.W.2d 833, 841–42 (Tex.1992, orig. proceeding); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 520 n. 37 (Tex.1992);

372, 312 S.W.2d 210, 216 (1958), a case which says nothing about legal sufficiency review or evidence of bad faith but concerns only the admissibility of evidence. The sole justification given for this new focus "is [the] necess[ity] to maintain the distinction between a contract claim on the policy, and a claim of bad faith delay or denial." 866 S.W.2d at 600. This cryptic comment hardly constitutes even a decent rationalization for this unprecedented disregard of our constitution and over a century of jurisprudence.

I.

The constitutional prohibition against fact-finding by this Court applies, no less than in any other situation, to an insurer's contention that there is no evidence to support a jury finding of a delay or denial of a claim without reasonable basis. Until today, reasonableness had been recognized as a question of fact to be decided by the fact-finder. *See, e.g., Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 456 (Tex.1972) (citing cases); *Nationwide Mutual Ins. Co. v. Crowe,* 857 S.W.2d 644, 648 (Tex.App.—Houston [1st Dist.] 1993, writ pending). An appellate court should not weigh conflicting evidence in conducting a no evidence review; rather, all conflicts must be resolved in favor of the verdict. The effect of this standard is that an appealing insurer must demonstrate that a reasonable basis for delay or denial is

conclusively established in the record. If, upon reviewing the evidence in the light most favorable to the verdict, reasonable minds could differ as to the reasonableness of the claim's denial, the no-evidence challenge fails. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). This is the approach that courts of appeals have generally followed when determining whether there was no evidence of an insurer's unreasonableness.[2]

Substituting its new relevancy analysis for this previously well-established law, the majority arbitrarily and without any explanation declares that evidence Lyons offers to show bad faith is only evidence of coverage. The categorical distinction drawn here between evidence relevant to coverage and evidence relevant to bad faith conflicts with our holding in *Aranda v. Ins. Co. of North America,* 748 S.W.2d 210, 213 (Tex.1988), that the insured's presentation of evidence to the insurer that his claims were covered constituted some evidence that there was no reasonable basis for denial. *See also St. Paul Ins. Co. v. Luker,* 801 S.W.2d 614, 620 (Tex.App.—Texarkana 1991, no writ) (evidence contradicting the insurer's factual assertion, which formed the basis for its denial of coverage, is sufficient alone to defeat a no evidence challenge to a jury finding that the denial was unreasonable).

*Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 5–6 (Tex.1991).

**2.** *See, e.g., State Farm Fire & Cas. Co. v. Simmons,* 857 S.W.2d 126, 132–36 (Tex.App.—Beaumont 1993, writ pending) (court conducting no evidence review should not "second guess fact-finders unless only one inference could be drawn from the evidence"); *Commonwealth Lloyd's Ins. Co. v. Thomas,* 825 S.W.2d 135, 143 (Tex.App.—Dallas 1992) (testimony of insured's expert witness as to inadequacy of insurer's investigation constituted some evidence of no reasonable basis), *judgment set aside pursuant to settlement agreement,* 843 S.W.2d 486 (Tex.1993); *Wm. H. McGee & Co. v. Schick,* 792 S.W.2d 513, 521–22 (Tex.App.—Eastland 1990) (considering only the evidence supporting the finding), *judgment set aside pursuant to settlement agreement,* 843 S.W.2d 473 (Tex.1992); *St. Paul Ins. Co. v. Rakkar,* 838 S.W.2d 622, 626 (Tex.App.—Dallas 1992, writ denied) (following *Kindred,* deficiencies in insurance investigator's report as well as factual dispute as to insurer's actual reliance on that report are some evidence of no reasonable basis); *Automobile Ins. Co. of Hartford v. Davila,* 805 S.W.2d 897, 905 (Tex.App.—Corpus Christi 1991, writ denied) (in "no evidence" review of jury finding of no reasonable basis, "we consider only the evidence and reasonable inferences that tend to support the jury findings, and disregard all evidence and inferences to the contrary"); *State Farm Mut. Auto. Ins. Co. v. Zubiate,* 808 S.W.2d 590, 596 (Tex.App.—El Paso 1991, writ denied) (considering only evidence of no reasonable basis viewed in light most favorable to jury verdict); *St. Paul Guardian Ins. Co. v. Luker,* 801 S.W.2d 614, 620 (Tex.App.—Texarkana 1990, no writ) (conducting legal sufficiency review of jury finding of bad faith, "the court considers only the evidence tending to support the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary and conflicting evidence"); *Allied Gen. Agency, Inc. v. Moody,* 788 S.W.2d 601, 607 (Tex.App.—Dallas 1990, writ denied) (some evidence of no reasonable basis). *But cf., e.g., State Farm Lloyds, Inc. v. Polasek,* 847 S.W.2d 279, 283–87 (Tex.App.—San Antonio 1992, writ denied) (reversing on legal sufficiency grounds jury finding of no reasonable basis because there was undisputed evidence of a reasonable basis).

In discounting Lyons' expert opinion as relevant only for jury consideration of the coverage dispute, the majority necessarily evaluates the credibility, sufficiency and weight of Millers' experts in order to find that their investigation was serious, adequate and factually constituted a reasonable basis for denial of Lyons' claim. To the extent that the majority implicitly disparages the testimony of Lyons' expert as inadequate to overcome the credibility attributed to Millers' experts, it is engaging in the very type of factual sufficiency review precluded by Article V, section 6 of the Texas Constitution.

## II.

An obscure and incomplete summary of the record is presented in today's opinion:

[t]he evidence offered by Lyons in support of the bad faith finding consisted of Avila's opinion that the windstorm caused the damage, and her testimony and that of her neighbors that the brick veneer and staircase were visibly damaged after the storm.

866 S.W.2d at 600–601. Although this evidence is acknowledged to be relevant to the validity of Lyons' coverage claim, the majority declares that neither this nor any other evidence is relevant to Millers' bad faith:

Lyons offered no evidence that the reports of Millers' experts were not objectively prepared, or that Millers' reliance on them was unreasonable, or any other evidence from which a factfinder could infer that Millers acted without a reasonable basis and that it knew or should have known that it lacked a reasonable basis for its actions.

866 S.W.2d at 601. A thorough review of the record reveals that this is just not true.

Corroborating Lyons' own testimony regarding damage to the house caused by the windstorm, Louie Zivot, a neighbor and former lawyer for H. Ross Perot, testified that the back stairway was damaged by the storm to the point of being too dangerous to use. Until the storm, he also had observed no brick veneer damage. Having been in Lyons' backyard both the day after this occurrence and several times before it, another neighbor, Mary Hairston, observed damage to the rear wall and the previously functional stairway only after the windstorm. The obvious and highly visible nature of the damage was evidenced by photographs, authenticated as showing the post-storm condition of the house, revealing severe damage to the stairway and to the brick on the rear wall; according to one eyewitness, the brick veneer had separated and pulled away "quite a distance" from the house.

Millers initially denied Lyons claim within a month of its receipt solely on the basis of a three sentence written "report"; its claims adjustor refused to talk to Lyons, even to the point of hanging up when she called with inquiries; and its investigators consciously chose not to interview any independent eyewitnesses until Lyons, almost two years after making her claim, filed suit. Compare State Farm Mut. Ins. Co. v. Moran, 809 S.W.2d 613, 618 (Tex.App.—Corpus Christi 1991, writ denied) (insurer's failure to interview two eyewitnesses to occurrence relating to coverage is legally and factually sufficient evidence of bad faith).

Condemning it as "cumulative of Ms. Lyons' own opinion," the majority excuses completely the insurer's failure to interview the only eyewitnesses to the aftermath of the windstorm. 866 S.W.2d at 601. What is it about observations whose source is a neighbor that makes them inherently worthless? Nor is any explanation offered as to why the appearance of that "damage [which] was visible after the storm" has no significance. 866 S.W.2d at 601 n. 3. While it could easily be misread as holding that insurance investigators can disbelieve an insured without even bothering to interview witnesses, today's opinion is actually more narrow. Note three merely represents the method contrived for this particular case to vaporize the life testimony of three Texans in order to justify a preconceived result.

The majority fails to mention other evidence that, when interpreted in a light favorable to the jury's verdict, shows bad faith on the part of the insurer. Millers continued to refuse any payment on Lyons' claim even after she produced an engineering report explaining a means, never fully explored by

the insurer, by which the windstorm had caused at least part of the damage.

Additional evidence was introduced from which the jury could have concluded that the claim was denied after only a perfunctory and incomplete investigation, which purposefully ignored evidence contradicting Millers' predetermined conclusions. *See Simmons*, 857 S.W.2d at 133 (some evidence of bad faith when evidence would enable "jury [to] conclude that [insurer] began with its intended outcome and investigated backwards"). The claims adjuster limited the scope of investigation to determining whether damage was caused by a tree downed by the windstorm, rather than considering the effect of a still-standing windblown tree. Apparently the jury at least partially accepted the conclusion of Lyons' expert that the effect of the storm on the latter tree caused the damage, and implicitly rejected at least part of the testimony of Millers' expert, an engineer, who had previously testified about two hundred times, and who relied on the insurance industry for eighty percent of his work. Mistakes, regarding location of trees and the stairwell support, contained in the latter expert's report constituted additional evidence in support of the jury's conclusion.

Today's opinion never indicates why these facts do not constitute some evidence that Millers' failure to tender timely at least a portion of the estimated repair costs for the damage was without reasonable basis. *Compare Crowe*, 857 S.W.2d at 649 (whether insurer had reasonable basis to deny claim is not determined solely by what insurer knew but by what it could have known through a reasonably thorough investigation); *Thomas*, 825 S.W.2d at 144 (testimony of insurer's expert identifying defects in insured's investigative report is some evidence of breach of good faith and fair dealing); *State Farm Fire & Casualty Co. v. Simmons*, 857 S.W.2d 126, 133–35 (Tex.App.—Beaumont 1993, writ

pending) (insurer's duty of good faith includes an "obligation to conduct a fair, objective, thorough and systematic investigation[,] turn[ing] over every leaf ..., consider[ing] the positive along with the negative, and indulg[ing] its policy holder with the benefit of the doubt."); *Moody*, 788 S.W.2d at 607 ("duty of good faith and fair dealing is breached when there is no reasonable basis for denial of a claim *or* delay in payment *or* a failure by the insurer to determine whether there is any reasonable basis for the denial or the delay."). But even if this Dallas jury failed to evaluate this evidence correctly, and even if the result achieved here by this new factual sufficiency review were correct, a great wrong has, nevertheless, been committed today with the breach of a clear constitutional command limiting our jurisdiction. The court of appeals overturned the jury finding of bad faith by holding there was no evidence of bad faith. I would reverse on that point and remand for consideration of Millers' factual sufficiency point of error, which was never considered by that court.

## III.

When disagreeing with a jury verdict—particularly a jury verdict adverse to an insurance company—the majority increasingly substitutes its own preferences in place of the deliberations of a constitutionally empaneled jury composed of twelve members of the local community. Today's opinion continues this steady erosion of our right to trial by jury. *See, e.g., May v. United Services Ass'n of America*, 844 S.W.2d 666, 675 (Tex.1992) (Doggett, J., dissenting).[3] Disregarding a basic constitutional restraint on our judiciary, the majority arbitrarily extinguishes evidence presented by a policyholder and relied upon by the jury through a brief, cryptic and unprecedented declaration that such evidence is no longer relevant. In truth, it is our

---

**3.** *See also C & H Nationwide, Inc. v. Thompson*, 1993 WL 483450 *18 (Tex.1993) (Doggett, J., concurring and dissenting); *General Motors Corp. v. Saenz*, 1993 WL 483479 *9 (Tex.1993) (Doggett, J., dissenting); *Texas Ass'n Businesses v. Texas Air Control Bd.*, 852 S.W.2d 440, 459–67 (Tex.1993)·(Doggett, J., concurring and dissenting); *Boyles v. Kerr*, 855 S.W.2d 593, 609–10, 616 (Tex.1993) (Doggett, J., dissenting); *Leleaux*

*v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 55–56 (Tex.1992) (Doggett, J., dissenting); *Crim Truck & Tractor v. Navistar Intern. Transp. Corp.*, 823 S.W.2d 591, 599 (Tex.1992) (Mauzy, J., dissenting); *Reagan v. Vaughn*, 804 S.W.2d 463, 491 (Tex.1991) (Doggett, J., concurring and dissenting); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 527 (Tex.1990) (Doggett, J., dissenting).

**606**

Texas Constitution that the majority, through its covert factual sufficiency review, has pronounced irrelevant.