**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 2, 2011

No. 10-51013

Lyle W. Cayce
Clerk

DENNIS THOMPSON,

Plaintiff - Appellant

v.

ZURICH AMERICAN INSURANCE COMPANY; SPECIALTY RISK
SERVICES, L.L.C.; JANET WATSON,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, HAYNES, Circuit Judge, and CRONE, District
Judge.[*]

HAYNES, Circuit Judge:

Dennis Thompson ("Thompson") appeals the district court's grant of
summary judgment in favor of Zurich American Insurance Company ("Zurich"),
Specialty Risk Services, L.L.C. ("SRS"), and insurance adjuster Janet Watson
("Watson") on his claim for wrongful denial and delay of workers' compensation
benefits under Texas common law, the Texas Insurance Code, and the Texas
Deceptive Trade Practices Act ("DTPA").  Thompson's arguments address only
the grant of summary judgment regarding the alleged bad faith denial of his

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

claim, so we find all other claims waived.[1]   For the reasons set forth below, we AFFIRM the judgment in favor of Appellees.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This appeal arises from Appellees' denial of workers' compensation benefits to Thompson after he suffered a torn meniscus while working as a welder for Zachry Construction.  On November 3, 2007, Thompson slipped on a grading stake while attempting to investigate a possible fire.  The company doctor, Nicholas Baxter, ordered x-rays, which revealed no damage, and Baxter thus diagnosed Thompson with a sprained knee and ankle.  Thompson returned to work and was put on light duty, yet resigned two weeks later.

After his resignation, Thompson continued to have pain in his right knee. On February 26, 2008, Thompson sought care from his primary care physician, Dr. David Drury, who recommended that Thompson obtain an MRI.  The resulting MRI revealed a torn meniscus, so Dr. Drury referred Thompson to Dr. John Waldrop, an orthopedic surgeon.  In response, the workers' compensation insurance carrier, Zurich, hired an independent third party service, SRS, to handle Thompson's claim.  SRS then selected an orthopedic specialist, Dr. Alan Strizak, to perform a records and peer review.  Dr. Strizak concluded that the meniscus tear was not work related, but was more likely an injury that pre-dated Thompson's work accident.  On March 14, 2008, Zurich disputed both

---

[1] Because Thompson has not raised any issue on appeal except for the Appellees' alleged bad faith in denying Thompson's claim, Thompson waives his other claims under the Texas Insurance Code—i.e., Texas Insurance Code § 541.061 (misrepresentation). *United States v. Saldana*, 427 F.3d 298, 306 n.21 (5th Cir. 2005) (finding that a party who fails to brief an issue is considered to have abandoned the claim).  Thompson also correctly conceded at oral argument that, after the district court's judgment in this case, the Texas Supreme Court eliminated a workers' compensation claimant's ability to bring a cause of action under Texas Insurance Code § 541.060.  *Tex. Mut. Ins. Co. v. Ruttiger*, 54 Tex. S. Ct. J. 1642, 2011 WL 3796353, at *6-12 (Tex. Aug. 26, 2011).  Lastly, because "we have determined that he cannot recover on his Insurance Code claims, we likewise hold that he cannot recover on his DTPA claim [premised on the Insurance Code violations]." *Id.* at *14.

Thompson's disability (his inability to obtain and retain employment at pre-injury wages) and that the injuries identified in the MRI were related to his compensable injury from November 3, 2007.

Thompson filed an administrative claim with the Texas Department of Insurance, Workers' Compensation Division ("WCD") regarding resolution of the questions of disability and compensability. As part of those proceedings, Thompson was examined by Dr. Derry Crosby, who was neutrally appointed by the WCD. On June 30, 2008, Dr. Crosby provided his written evaluation, generally disputing Dr. Strizak's conclusion that the meniscus tear was pre-existing and suggesting that Thompson should not return to full work duties. Dr. Crosby did note, however, that there was evidence of a pre-existing degenerative condition in Thompson's knee. Following Dr. Crosby's report, Appellees continued to dispute liability for the tear. In the November 21, 2008, Contested Case Hearing that followed, the WCD ruled that Thompson's compensable injury did extend to the meniscus tear and that he was disabled as a result. Zurich promptly instituted Thompson's benefits, and Thompson began orthopedic treatment. Zurich declined to pursue further administrative appeal. On February 20, 2009, Thompson had surgery on his right knee.

Several months later, Thompson filed suit against Zurich, SRS, and Watson. Thompson alleged common law claims for breach of the duty of good faith and fair dealing for failure to conduct a reasonable investigation and that Zurich had no reasonable basis for denying or delaying benefits. During the course of this case, both Dr. Waldrop and Dr. Drury gave deposition testimony to the effect that Dr. Strizak's opinion was unreasonable. Appellees filed for summary judgment on all claims. The district court granted summary judgment in favor of Appellees on all grounds and imposed costs on Thompson, but denied Appellees' request for sanctions. Thompson timely appealed.

## II.  STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 645 (5th Cir. 2008).  As such, summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  This standard is based not solely on "whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citation omitted).  In addition, we must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010).

## III.  DISCUSSION

Thompson's medical benefits have been paid; the only issue on appeal is whether Appellees complied with the duty of good faith and fair dealing in resolving Thompson's claim.  Under Texas law, insurers have long had a duty to deal fairly and in good faith with an insured in processing and paying claims. *See, e.g.*, *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212-13 (Tex. 1988); *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987).[2]  To

---

[2] The Texas Supreme Court's recent decision in *Ruttiger* casts doubt on a claimant's future ability to bring a claim against a workers' compensation insurance carrier based on a breach of the common law duty of good faith and fair dealing.  2011 WL 3796353.  According to the four Justices representing the *Ruttiger* plurality, amendments to the Workers' Compensation Act eliminated the need for a common law cause of action by addressing the power imbalance inherent in the workers' compensation system through a series of changes aimed at removing insurers' exclusive control over claim-processing, providing more transparency to employees through neutral assistance programs, and providing multiple remedies and penalties for insurers' violations of the Act.  *Id.* at *17.  In their view, an extra-statutory cause of action "distorts the balances struck in the Act and frustrates the Legislature's intent to have disputes resolved quickly and objectively." *Id.* at *18.

The three dissenting Justices, however, concluded that the Act does not reflect legislative intent to abrogate the good faith cause of action and they would thus maintain a

avoid liability for denying or delaying a claim, an insurer must establish a bona fide controversy with a reasonable basis for denial or delay, "even if that basis is eventually determined . . . to be erroneous." *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993); *see also Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997).[3]

As relevant to this appeal, an insurer has a duty to conduct a reasonable investigation. *Giles*, 950 S.W.2d at 56 n.5. In turn, the insurer is allowed to rely upon experts as to matters requiring expertise (such as medical causation), but such reliance must be reasonable. *See id.* at 81 (citing *Lyons*, 866 S.W.2d at 600-01)(Enoch, J., concurring); *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 193 (Tex. 1998); *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997)).

To determine whether Appellees denied or delayed payment after liability became reasonably clear, *Giles*, 950 S.W.2d at 56, one looks to an objective standard to determine whether "'a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits.'" *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995) (quoting *Aranda,* 748 S.W.2d at 213). It is well settled that a physician's opinion on the medical foundation for a claim may be a reasonable basis for an insurer to dispute a claim, but it is

---

common law duty of good faith and fair dealing on insurers regarding workers' compensation claims. *Id.* at *24-27. Two Justices declined to rule, as the matter had not been first considered by the court of appeals. Because a majority of the court has not yet eliminated the common law duty of good faith and fair dealing at this time, we address the claim here.

[3] *Aranda* created a two-prong basis for establishing a bad faith claim. The insured must establish first "the absence of a reasonable basis for denying or delaying payment of the benefits of the policy"; and second, "that the carrier knew or should have known that there was not a reasonable basis for denying or delaying payment of the claim." 748 S.W.2d at 213. While caselaw often echoes this formulation of the standard, the Texas Supreme Court clarified the standard in *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997), by turning from a "no reasonable basis" standard to one that requires showing an insurer's failure to settle (or pay) "a claim after its liability has become reasonably clear." *Id.* at 56.

not without limits. *Nicolau*, 951 S.W.2d at 448 (citing *Lyons*, 866 S.W.2d at 601).

### A. Reliance on Dr. Strizak's Report

Appellees argue they reasonably relied on Dr. Strizak's peer review, which determined that Thompson's injury was pre-existing and thus not compensable. Thompson, on the other hand, cites *Nicolau*, which held that a carrier's reliance on an expert report may be brought into question if the "report was not objectively prepared" or "the insurer's reliance on the report was unreasonable." *Id.* Thompson alleges that Dr. Strizak's opinion was biased in favor of Appellees based on several factors, including the contrary expert opinions of three other doctors, Watson's failure to contact Dr. Drury about the initial examination, Dr. Strizak's repeated employment and compensation by insurance companies, and Dr. Strizak's reliance on only fourteen pages of records, rather than examining Thompson or the MRI films. We will discuss these contentions in turn.

#### 1. Conflicting Expert Opinions

Conflicting expert opinions, by themselves, do not establish that the insurer acted unreasonably in relying on its own expert. *See, e.g.*, *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994)*; Lyons*, 866 S.W.2d at 600; *Guajardo v. Liberty Mut. Ins. Co.*, 831 S.W.2d 358, 365 (Tex. App.—Corpus Christi 1992, writ denied). "In addition to the conflicting expert opinion, the party alleging bad faith must also bring direct or circumstantial evidence showing that the carrier's expert's opinion was questionable and that the carrier knew or should have known that the opinion was questionable." *Guajardo*, 831 S.W.2d at 365.

Dr. Strizak has well-documented credentials. Thompson was also initially diagnosed with only a sprain, and the subsequent request for an MRI and referral to an orthopedist for a torn meniscus was significantly removed—roughly three months—from the initial work-related injury. On these

facts, there is no material dispute that shows Appellees acted unreasonably in denying Thompson's claim on the basis of Dr. Strizak's report.

Thompson nonetheless argues extensively about Dr. Drury and Dr. Waldrop's disagreement with Dr. Strizak's opinion. Texas law, however, is clear that an insurer's reliance on an expert's opinion must be evaluated based upon knowledge at the time of the dispute, not information that comes to light later. *See, e.g.*, *Stoker*, 903 S.W.2d at 341 ("[W]hat is dispositive is whether, based upon the facts existing at the time of the denial, a reasonable insurer would have denied the claim."); *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) ("Whether there is a reasonable basis for denial . . . must be judged by the facts before the insurer at the time the claim was denied."). The record shows that Dr. Waldrop did not see Thompson until after the benefits dispute was resolved. Further, even though Dr. Drury disagreed with Dr. Strizak's findings, he did not convey his opinion to Appellees or dispute Dr. Strizak's report because he regarded Dr. Strizak as an orthopedic surgeon with more expertise on the matter. Dr. Waldrop's and Dr. Drury's opinions may support the inference that Dr. Strizak was incorrect in his conclusion, but that does not establish bad faith. *See Moriel*, 879 S.W.2d at 18.[4]

### 2. The Basis for Dr. Strizak's Medical Opinion

Thompson next argues that Dr. Strizak's opinion was unreasonable because it was not supported by Thompson's medical records. Dr. Strizak's opinion, however, was substantiated by an extensive medical analysis of the effects of certain degenerative conditions. Dr. Strizak may not have found prior treatment for knee injuries in Thompson's medical records, but his opinion that Thompson's injury was pre-existing was supported by a documented medical

---

[4] Dr. Crosby's report, discussed more fully below, was not available at the time of the initial denial and, therefore, cannot be a basis for finding the initial denial to be in bad faith. *See Stoker*, 903 S.W.2d at 341.

basis.   To establish bad faith, the plaintiff must show, not an expert's unreasonableness, but that the omission in the expert's investigation is of such magnitude as to affirmatively cast doubt on the insurer's basis for denial.  *See Lyons*, 866 S.W.2d at 601 n.3 (noting that the bad faith claim is based not on the validity of the claim, but on the reasonableness of the insurer's conduct in rejecting the claim).  Though Dr. Strizak did not physically treat Thompson—he relied exclusively on medical reports—Thompson does not raise a fact issue that Dr. Strizak acted contrary to what a doctor is required to, or should, do in the process of completing a peer review investigation.  *See Maynard v. State Farm Lloyds*, No. 3:00-CV-2428-M, 2002 WL 1461923, at *5 (N.D. Tex. July 2, 2002) (rebuking insured's claims as to the deficiencies in an expert's report because the insured provided no evidence "that such inspectors usually do [differently] in the process of completing an investigation").  Thompson shows little more than a "scintilla of evidence" upon which a jury could find in his favor, and that is not sufficient to escape summary judgment.  *See Sadler,* 909 F.2d at 837.

### 3. Dr. Strizak's Alleged Bias

Thompson also argues that Dr. Strizak was biased.  To show bad faith and a pretextual investigation, Thompson must show much more than Appellees' hiring someone who primarily works for insurance companies.  *See, e.g.*, *Travelers Pers. Sec. Ins. Co. v. McClelland*, 189 S.W.3d 846, 854 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Thompson's reliance on *Nicolau* and *State Farm Lloyds v. Hamilton*, 265 S.W.3d 725 (Tex. App.—Dallas 2008, pet. denied) is unavailing because his argument makes inferences that the record does not support.  In both cases, there was evidence that the insurer's expert was chosen specifically because of a predilection to decide consistently one way—in favor of the insurer.  *See Nicolau*, 951 S.W.2d at 449; *Hamilton*, 265 S.W.3d at 734.  For example, the

insurer in *Nicolau* hired an expert with a specific and well-known opinion about whether water leaks cause foundation damage. *Nicolau*, 951 S.W.2d at 448-49. In fact, out of nearly one hundred reports conducted by the expert, only two found damage that would contribute to insurer liability. *Id.* at 449. Moreover, the insurer admitted knowing this when the expert was hired. *Id.* at 448-49.

Thompson argues that Dr. Strizak is biased because Appellees pay him handsomely, he works extensively for insurance companies, and SRS's adjuster could not name any other doctors that SRS used. However, there is nothing in the record showing that Dr. Strizak gave opinions predominantly in favor of insurers or that Appellees had knowledge of such a predisposition. Ultimately, it would be far too demanding and impractical to require insurers to hire a different doctor for every medical record review or be faced with judicial review of its decision to rely upon a credentialed expert. We thus conclude that Thompson has not raised a material factual dispute on this issue.

## B. Aggravation

Aggravation of pre-existing injuries is included in the definition of a "compensable" injury under Texas law. *See, e.g.*, *Kreinik v. Ne. Indep. Sch. Dist.*, No. 04-06-00079-CV, 2007 WL 602606, at *1 (Tex. App.—San Antonio Feb. 28, 2007, no pet.); *Allstate Tex. Lloyds v. Mason*, 123 S.W.3d 690 (Tex. App.—Fort Worth 2003, no pet.). Thompson thus argues that Appellees must completely rule out aggravation by showing that a pre-existing condition is the "sole cause" of the present incapacity for an insurer to reasonably deny coverage on that basis. *See Tex. Emp'rs Ins. Ass'n v. Page*, 553 S.W.2d 98, 100 (Tex. 1977). This argument ignores Texas authority requiring that the injury be a "producing cause" of the complained incapacity, "defined as a *substantial factor in bringing about an injury* or death, and without which, the injury or death would not have occurred." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 223 (Tex. 2010)

(emphasis added). Dr. Strizak's report found the injury "not causally related to, aggravated by, or accelerated by" the incident. This is precisely the rationale Appellees relied on in denying the claim initially. Without any evidence that Appellees had knowledge to the contrary at the time of the initial denial, Thompson cannot establish bad faith as a matter of law.

### C. Appellees' Continuing Duty to Investigate

Though Thompson has not raised an issue of material fact that could establish Appellees initially denied coverage even though it had become "reasonably clear," *Giles* also established that "[a]n insurer will not escape liability merely by failing to investigate a claim so that it can contend that liability was never reasonably clear. . . . [A]n insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." 950 S.W.2d at 56 n.5; *see also Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004) (noting that Texas courts do not require an insured to be legally entitled to recover to find coverage is "reasonably clear"). The question then centers around the intervening months between Dr. Crosby's opinion (as the WCD designated doctor) and the ultimate decision to pay after the adverse ruling in the Contested Case Hearing. We bear in mind also that even though Dr. Crosby's analysis ultimately found "conflict with the overall outcomes suggested by Dr. Strizak," he agreed "with Dr. Strizak in the fact that the popliteal cyst probably predated the injury" and that there "may have been some degenerative changes."

*Giles* clearly establishes that an insurer may not summarily reject an initial claim, thereafter refusing to undertake additional investigation or consider the merits of an insured's claim. The Texas Supreme Court has, however, limited an insurer's duty to continuously investigate a claim, simply stating that "[a]n insurance company's obligation to investigate is obviously not

unlimited." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). The standard *Simmons* articulates is notably dependent on the circumstances of the dispute—"[t]he scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues . . . ." *Id.* at 44-45. In addition, the temporal inquiry must "begin[] by determining whether liability became reasonably clear and end[] by focusing upon the insurer's actions thereafter." *Tucker v. State Farm Fire & Cas. Co.*, 981 F. Supp. 461, 466 (S.D. Tex. 1997).

In the case before us, roughly three months elapsed between the time Appellees initially denied Thompson's claim and Dr. Crosby issued a report contradicting Dr. Strizak. Another five months passed until Zurich paid Thompson's claim. We are thus faced with the question of Appellees' obligations in light of new contradictory evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 818 (Tex. 2005) ("[W]hile an insurer's reliance on an expert report may foreclose bad faith recovery, it will not do so if the insurer had some reason to doubt the report." (quoting *Nicolau*, 951 S.W.2d at 448)). Though most Texas insurance cases in this area deal with an insurer's duty at the time of initial denial, *Simmons, Tucker*, and *Giles* illuminate the proposition that an insurer does have at least some continuing duty to the insured even after an initial reasonable denial.

Given the case-specific nature of this inquiry, *see Simmons*, 963 S.W.2d at 44-45, we examine Thompson's evidence against the backdrop of the Texas Workers' Compensation Act's strict dispute resolution process. *See generally Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 802 (Tex. 2001) (holding that extra-contractual exposure for the denial of a non-covered claim is not possible due to the detailed regulatory process encompassed in the Workers' Compensation Act). This process involves a four-tier system: the parties first

participate in a benefit review conference, followed by a contested case hearing, review by an appeals panel, and finally judicial review.  TEX. LAB. CODE ANN. §§ 410.021, 410.104, 410.201, 410.251 (West 2006).  This process is detailed and comprehensive, incorporating a "conveyor-belt" approach, where "once the administrative dispute resolution process is initiated, a dispute continues through the process until the dispute is either resolved by the parties or by a binding decision through the resolution procedures."  *Ruttiger*, 2011 WL 3796353, at *9.  This administrative process is also governed by extensive penalty and sanction provisions for "failing to process claims promptly and in a reasonable and prudent manner, controverting a claim if the evidence clearly indicates liability, and failing to comply with the Act."  *Id.* (citing TEX. LAB. CODE §§ 409.021(e), 415.002(a)(11), (18), (22)).  It is within this framework that insurance companies are required to participate in resolving workers' compensation disputes.

Although Thompson may hypothesize over countless additional investigatory steps, Appellees followed their standard peer review process and relied on their expert's advice, then dutifully participated in the WCD's administrative proceedings.  Though one neutral doctor partially controverted Appellees' expert, Appellees only denied coverage until resolution of the Contested Case Hearing—the second step in the administrative process.  Appellees then promptly paid Thompson's claim without availing themselves of the last two steps of review, knowing full well that an insurer is within its right to dispute a claim despite conflicting expert opinions.  Ultimately, insurers do not have a "duty to leave no stone unturned," *State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 288 (Tex. App.—San Antonio 1992, writ denied), especially when undergoing the administrative process the legislature created for this purpose.

- 13 -

The "Texas Constitution confers an exceptionally broad jury trial right upon litigants." *Giles*, 950 S.W.2d at 56. Nevertheless, the plaintiff still must show there is a material issue of fact about whether the insurer denied coverage despite an indication that coverage had become "reasonably clear" or the insurer acted unreasonably in failing to investigate. Construing "all facts and inferences in the light most favorable to the nonmoving party," *Rogers*, 596 F.3d at 266, there is no material factual dispute at issue.[5] The evidence that puts reliance on Dr. Strizak's report in doubt was gathered during the course of this post-payment litigation, not the administrative process. We conclude that Thompson has failed to raise a material fact issue with respect to his common-law bad faith cause of action.

AFFIRMED.

---

[5] Because we hold that Thompson has presented no issue of material fact in dispute regarding Appellees' duty of good faith under these facts, we need not further discuss the specific parameters of the extent to which a carrier must continue to investigate a claim after the initial denial of benefits.