**SOUTHERN LIFE & HEALTH INSURANCE CO.,**
Appellant,

v.

**Antonio G. ALFARO, Appellee.**

No. 04–91–00470–CV.

Court of Appeals of Texas,
San Antonio.

April 27, 1994.

C.G. House, House & House, Thomas H. Crofts, Jr., Wallace B. Jefferson, Crofts, Callaway & Jefferson, San Antonio, for appellant.

Allen F. Cazier, and Catherine M. Stone, Law Offices of Catherine M. Stone, San Antonio, for appellee.

Before CHAPA, C.J., and REEVES [1] and CARR,[2] JJ.

1. Blair Reeves, Justice (Retired) assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. Justice Ron Carr not participating.

OPINION ON APPELLANT'S MOTION
FOR REHEARING

REEVES, Justice (Retired).

Appellant's motion for rehearing is granted. The original opinion issued by this court on February 26, 1993 is withdrawn and substituted by the opinion issued herein.

This appeal questions a trial court's decision holding an insurance company liable for violations of the Texas Insurance Code.

FACTS

On May 14, 1988, Tony Alfaro was shot and killed by Armando Castillo in Poth. Tony Alfaro was the named insured in a $10,000.00 term life insurance policy issued by Southern Life & Health Insurance Company (Southern Life). The policy provides a $10,000.00 accidental indemnity rider. Antonio Alfaro, Tony's uncle, was named as primary beneficiary. Antonio submitted a claim on the policy. Southern Life paid Antonio the $10,000.00 face-amount but denied the accidental double-indemnity claim because, according to Southern Life, Tony's death resulted either directly or indirectly from the commission of, or attempted commission of, an assault or felony.

Antonio sued Southern Life claiming violations of the Texas Insurance Code. The case was tried to a jury. The court awarded appellee the double-indemnity accidental death benefit, attorney fees, and additional damages because the jury found Southern Life acted knowingly.

STANDARD OF REVIEW

Appellant asserts factual and legal sufficiency points of error.

In conducting legal sufficiency review of factfindings of bad faith against an insurer, we apply the substantive test adopted in *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988). *See Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 598 (Tex.1993). To establish an insurer's liability for the tort of bad faith, the insured

must prove: "(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy [*and*] (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Aranda,* 748 S.W.2d at 213; *see also Lyons,* 866 S.W.2d at 600.

> The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right on an insurer to reject an invalid claim and the duty of the carrier to investigate or pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay.

*Aranda,* 748 S.W.2d at 213.

In reconciling the insurer's substantive rights under the *Aranda* test and the traditional statement of the no evidence standard of review, the Texas Supreme Court has instructed that:

> when a court is reviewing the legal sufficiency of the evidence supporting a bad faith finding, its focus should be on the relationship of the evidence arguably supporting the bad faith finding to the elements of bad faith. The evidence presented, viewed in the light most favorable to the prevailing party, must be such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim, and that it knew or should have known it had no reasonable basis for its actions. The evidence must relate to the tort issue of no reasonable basis for denial or delay in payment of a claim, not just to the contract issue of coverage. This is nothing more than a particularized application of our traditional no evidence review.

*Lyons,* 866 S.W.2d at 600 (citation omitted). The court continued that "the issue of bad

faith focuses not on whether the claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim." *Lyons,* 866 S.W.2d at 600.

■ In determining the factual sufficiency of the evidence, the court will consider and weigh all evidence. The finding will be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

### KNOWING CONDUCT

In three points of error, appellant contends: (1) it was error to award additional damages because there is no pleading or insufficient evidence to support the jury finding that appellant knowingly engaged in certain unfair or deceptive acts or practices; (2) there is no evidence supporting the jury's finding that appellant failed to process the claim in good faith nor that this failure was done knowingly; and (3) alternatively, a new trial should have been ordered because the evidence is factually insufficient to support the findings in Jury Questions 3 and 4. These points of error will be considered together.

■ Appellant contends that Jury Question 4 cannot support the additional damage award because it does not inquire about *knowing conduct.* Jury Question 4 which was affirmatively answered was submitted as follows: "Did Southern Life and Health Insurance Company fail to process the claim in good faith?"

■ In a jury trial based upon the DTPA, a plaintiff who seeks exemplary damages (additional damages) must request a jury question on such damages or the plaintiff will waive recovery of those damages. *Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446, 448 (Tex.1984). Exemplary damages constitute an independent ground of recovery and as such, the trial court cannot make findings of fact when the issue has been omitted. *Martin,* 663 S.W.2d at 448. Because knowing conduct was not submitted in Jury Question 4, Jury Question 4 does not

support the judgment for additional damages. The additional damage award, however, may be supported by the jury's answer to Question 3.

*Jury Charge Question 3* was submitted and answered as follows:

Did Southern Life and Health Insurance Company knowingly engage in any unfair or deceptive act or practice?

(a) misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;

(b) failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;

(c) failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policies;

(d) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become reasonably clear.

ANSWER: Yes.

■ Appellant claims that the trial court erred in awarding additional damages because of pleading deficits: knowingly was not pleaded in regards to Jury Question 3(b)(c)(d), and the substance of Jury Question 3(b)(c) was not pleaded. We disagree.

An original pleading must contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R.CIV.P. 47. It has been held that pleadings are sufficient if they give notice of what issues are to be tried or if they give the adversary notice of what proof will be introduced at trial. *Ransopher v. Deer Trails, Ltd.,* 647 S.W.2d 106, 110 (Tex.App.—Houston [1st Dist.] 1983, no writ).

We find that knowingly was pleaded in regards to Jury Question 3(a)(c)(d) through paragraph VI of Plaintiff's Second Amended Original Petition: The facts and statutory citations that were pleaded gave appellant fair notice of the issues to be tried and notice of what proof would be introduced at trial.

Appellant contends there is no evidence, or in the alternative insufficient evidence, to support the affirmative jury findings regard-

ing Question 3(d) or Question 4: there is no evidence that appellant did not attempt a good faith settlement after liability had become reasonably clear. This is so, appellant claims, because a bona fide controversy is a sufficient reason for an insurer not to make a voluntary payment of a loss claim.

■ In his brief, appellant admits that it has "waived complaint about the form of the definition" of knowingly but asserts that its "insufficiency points must be considered in light of the true elements required by the liability theory."

Under TEX.INS.CODE ANN. art. 21.21, § 16 (Vernon Supp.1993) appellee is entitled to two times the amount of actual damages (additional damages) if the trier of fact finds that the defendant knowingly committed the acts complained of. "Knowingly" is defined as "actual awareness of the falsity, unfairness, or deception of the act or practice." TEX.INS.CODE ANN. art. 21.21, § 2(c) (Vernon Supp.1994). According to the jury charge, however, "knowingly" was defined "to act voluntarily and purposefully, not because of mistake or inadvertence or other innocent reason." The statutory definition of "knowingly" requires a higher burden of proof than that submitted to the jury. Consequently, if appellant's sufficiency points of error are judged according to the statutory definition, a reversal is more likely.

To embrace appellant's position would abrogate the waiver rule of TEX.R.CIV.P. 274, whereby any complaint regarding the jury charge is waived absent the proper objection; the jury would make its finding by the charge given but the verdict would be subject to reversal on appeal because a different standard of proof would be used. Consequently, appellant's insufficiency points will be considered in light of the "knowingly" definition submitted to the jury.

■ Appellant is not disputing the $10,-000.00 jury award for the accidental death claim; only additional damages are contested. We have already held that Jury Question 4 cannot sustain additional damages since "knowingly" was omitted from the jury charge. Therefore, we only consider appellant's point of error regarding whether appellant knowingly did not attempt a good faith settlement after liability had become reasonably clear.

The policy issued by appellant on Tony's life contained an "accident indemnity" rider which provided, in pertinent part, as follows:

## ACCIDENT INDEMNITY

**INDEMNITY**—Subject to the provisions of this rider, and upon receipt of due proof of death of the Insured resulting from bodily injuries, the Company will pay to the beneficiary, in addition to any amounts otherwise payable, the amount shown for this rider....

**DEFINITION OF BODILY INJURIES**—Bodily injuries as used in this rider shall mean injuries which are effected directly and independently of all other causes through external, violent and accidental means, as evidenced by visible contusion or wound on the exterior of the body....

**EXCLUSIONS FROM COVERAGE**—No amount shall be payable under this rider if the death of the Insured results directly or indirectly ... from the commission of, or attempt to commit, an assault or felony....

Thus, it was within appellant's contractual rights to refuse payment of the accidental rider if Tony's death resulted directly or indirectly from the commission of, or attempt to commit, an assault or felony. The question remains whether appellant knowingly refused payment after liability became reasonably clear.

Gracie Quintanilla was the driver of the car that brought Tony to Castillo's address. She was fourteen or fifteen years old at the time. She testified that the passengers in the car heard a gunshot and Tony told her to stop the car, which she did. Tony got out of the car and walked towards Castillo while Castillo got out of his van and walked towards their car. Even though it was dark she said the street light enabled her to see Tony and Castillo. She testified that Tony was not drunk and did not threaten Castillo. She also testified, however, that she could not hear what was said even though her car

windows were down and the men were standing three to five feet from the car talking. Castillo's criminal defense attorney testified that Tony had been drinking to the extent he would normally lose the normal use of his physical and mental facilities. She did not see Tony strike or attack Castillo. She testified that Tony never walked in the yard but fell into the yard when he was shot. She testified that when Tony was shot she drove the car to a store to call for help. When she returned, Tony was not lying where he fell; the body was moved further into the yard.

Connie Garcia was Tony's girlfriend who was a passenger in the car that evening, also. She testified that Tony got out of the car and walked towards the house. The men stood talking by the street. Although she could not hear what was said, she claims Tony did not make any threats toward Castillo. She could not remember if her car windows were rolled down. She testified that Castillo raised a gun and Tony stepped back with his hands up. She claims that no warning shot was given and that she heard only one shot even though Tony was shot twice. She testified that when she returned from calling for help, Tony's body had been moved higher into the yard.

Sheriff Urbanczyk was the first person to reach the shooting scene. He testified that Castillo was armed at the scene and pointed to Tony's body and said, "There is one of them and he is dead." The sheriff testified that Tony was unarmed and there were no signs at the scene which indicated Tony was attempting to commit a crime. Castillo was charged with murder and arrested. Tony's body was located on the southwest corner of the yard, twenty feet east from the street that bordered the west side of the yard. He and four other investigating sheriffs filed their reports in Castillo's file which was open to the public. The sheriff testified that the only blood at the scene was on Tony; this testimony was contrary to the testimony of Tony's aunt who said there was blood on the sidewalk.

The sheriff's testimony substantiated Castillo's claim of having a history of altercations with Tony's brother Jerry. The sheriff testified that about six weeks before the murder he had several calls to the area about disturbances caused by Tony's brother Jerry. Castillo had been indicted for aggravated assault with a baseball bat for having broken Jerry's arm on April 16, 1988; supposedly Jerry had been tearing up the home of Castillo's mother. Additionally, the night before the shooting Castillo called the sheriff's department complaining that Jerry was squealing his tires in front of his house. Upon investigation, Jerry complained that his car had been hit by gunfire; the sheriff found two bullet holes in Jerry's car.

Castillo made a written confession the night of the shooting. He started by saying that the trouble started two nights before when Jerry Alfaro peeled his tires in front of his house. The following night Jerry did the same thing so Castillo shot his .22 automatic rifle six times at Jerry's car. The following night Castillo was parked outside his mother's home. Castillo noticed a two-tone blue car and said it was suspicious. His brother-in-law remarked that someone had been driving the car around for hours. Castillo left, saw the car parked by his house, and drove his van to his house. He saw a man he thought was Jerry Alfaro. Castillo says Tony was leaning into the car telling the driver to go around the block and pick him up. Castillo told him to "get the hell out of here." He then realized it was not Jerry. Castillo presumed it was Jerry's brother since they looked alike. Tony kept walking towards him and Castillo says he was afraid of getting hurt. Castillo stated that Tony did not have anything in his hands. Tony asked him, "What is wrong with you," using profanity. When Tony was about twenty feet away Castillo says he fired a warning shot. Tony kept advancing. The car was still parked at the house and Castillo was afraid the passengers might try to stab him if he fought Tony. Castillo then decided to shoot and kill Tony. He fired two shots when Tony was about twelve feet away. Castillo said he fired two shots because Tony kept advancing after the first shot was fired. Tony fell to the ground and the car left. Castillo eventually was acquitted of the murder charges.

Appellant hired Equifax to investigate whether Tony was attempting to, or was committing, an assault or felony when he was killed. Neither appellant nor any agent of appellant interviewed Gracie Quintanilla or Connie Garcia about what they saw that evening. Additionally, appellant did not review Castillo's written confession until three months after they denied the accidental insurance claim. Appellant waited to deny the claim until after Castillo was acquitted of the murder charges.

Castillo's criminal defense attorney testified that Tony did not injure, verbally threaten, or physically contact Castillo. Additionally, he testified that there is no direct evidence that Tony committed a felony or attempted to commit a felony against Castillo. In his opinion, however, Castillo was being assaulted or about to be assaulted. He testified that under Texas law a verbal provocation alone may never form the basis for the legal right to self defense. He did testify, however, that under the doctrine of apparent danger the defendant has the right to act upon the reasonable appearance of danger. Finally, he testified that trespassing at night is a Class A misdemeanor.

If Castillo is to be believed that Tony had walked into his yard, Tony would have been guilty of trespassing which is a misdemeanor, not a felony. Additionally, the evidence is uncontroverted that Tony made no verbal threats and was not armed. There was evidence that Castillo was skittish over trouble with Jerry and was trigger happy; Castillo had no qualms about firing six shots at a car for squealing its tires in front of his house. From the testimony of Castillo's defense attorney, the jury could have concluded that Castillo's acquittal did not support the theory that Tony was attempting to commit or did commit a felony or assault. Under the theory of the apparent danger doctrine, Castillo could be acquitted even if there was no actual attack or attempted attack if he acted upon the reasonable apprehension of danger as it appeared to him from his standpoint at the time and if he reasonably believed such force was immediately necessary to protect himself against Tony's use or attempted use of force.

The vice president of the claims department admitted supervising appellee's claim. He admitted that under Texas law claims must be paid within thirty days from when the claim is made. Additionally, he outlined the extent of the investigation. Records from appellant showed that the company consciously decided to wait until the trial was over before they decided whether to pay the claim, despite their agent's characterization of the incident as a case of "mistaken identity."[3]

First, we consider appellant's legal sufficiency point of error. In so doing we focus on the reasonableness of appellant's conduct in rejecting the claim. *Lyons*, 866 S.W.2d at 600. We find, after viewing the presented evidence in the light most favorable to the prevailing party, that both elements of *Aranda* have been satisfied: The investigator hired by appellant interviewed neither Gracie Quintanilla nor Connie Garcia. Additionally, appellant did not review Castillo's written confession until three months after they denied the accidental insurance claim. Appellant based its decision of whether to pay the claim solely on the outcome of Castillo's criminal trial even when the result would not be dispositive of whether Tony was attempting to, or was committing, an assault or felony when he was killed: Under the apparent danger doctrine, Castillo could be acquitted of murder charges even if the jury found that Tony was not attempting to, or was committing, an assault or felony. This evidence permits the logical inference that an insurer under similar circumstances would not have delayed or denied the claimant's benefits. Additionally, the testimony of the vice president of appellant's claims department established the scienter of appellant in making the choice to deny payment. Based on its duty to investigate, appellant should have known there was no reasonable basis for denial or delay. Consequently, we overrule appellant's legal sufficiency point of error.

**3.** The vice president of the claims department stated that their insurance agents had no authori-

ty to make such a determination.

After considering and weighing all the evidence, we find the jury's finding is not contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. There was sufficient evidence to uphold the jury finding that appellant acted voluntarily or purposefully, not because of mistake or inadvertence or other innocent reason. Because the jury verdict is supported by instruction 3(d), we do not consider whether the evidence supports instructions 3(b)-(c).

Appellant's first three points of error are overruled.

### ATTORNEY'S FEES

In his fourth point of error appellant contends the trial court erred in allowing appellee to recover 40% of the trebled accidental death benefit as reasonable attorney fees because as a matter of law: (a) appellee was not entitled to recover treble damages; (b) the reasonableness of a contingent fee percentage, standing alone, does not establish the amount of reasonable fees that a claimant may recover under article 21.21, section 16 of the Texas Insurance Code; and (c) additional liability for a percentage of what amounts to punitive damages is not contemplated by article 21.21 of the Texas Insurance Code and is contrary to public policy. In his fifth point of error appellant contends that the trial court erred in not ordering a new trial because the evidence is insufficient to support the $14,160.00 attorney fee award, which is excessive. We consider these two points of error together.

We have already upheld Jury Question 3 which supports an award of additional damages. Thus, point of error 4(a) is overruled.

■ Appellant alleges that as a matter of law, the reasonableness of a contingent fee percentage, standing alone, does not establish the amount of reasonable fees that a claimant may recover under TEX.INS.CODE ANN. art. 21.21, § 16 (Vernon Supp.1993). Taking appellant's contention as true, there was evidence other than the contingent fee contract in the record justifying the award.

In support of his claim for attorney's fees, appellee's attorney testified to the following: (1) he has been a member of the Texas State Bar for eighteen years; (2) he has experience in criminal, consumer protection, and civil rights law; (3) he has a 40% contingency fee contract with appellee; (4) a 40% contingency fee is reasonable, usual, and customary in this type of case; (5) he had traveled to Floresville approximately six times for docket call, pre-trial hearing, motions, jury selection, and trial; (6) he had interviewed all of the witnesses except Mr. Alvarez; (7) he examined all documents produced by the insurance company and all documents used at trial; (8) he reviewed the policy, the endorsements, and researched the law concerning insurance exclusions; and (9) no contingent fee was sought with regard to any part of the case having to do with the failure of the insurance company to pay the face amount of the policy within thirty days of demand. Point of error 4(b) is overruled.

■ Appellant alleges that as a matter of law the additional liability for a percentage of what amounts to punitive damages is not contemplated by article 21.21 and is contrary to public policy. Appellant waived this point of error when he failed to object to the submission of the charge.

Jury Question 6 was submitted and answered as follows:

What is a reasonable fee for the necessary services of Antonio G. Alfaro's attorney in this case, stated as a percentage of Antonio G. Alfaro's recovery?

Do not consider any services relating to the question of the payment of the face amount of the policy within 30 days after demand.

Answer by stating a percentage.

ANSWER: 40%.

The charge allows additional liability for a percentage of what amounts to punitive damages because it asks the jurors to award a percentage of the **recovery** when appellee was seeking both actual and additional damages. Because appellant did not timely object to the charge, he has waived any error. *See* TEX.R.CIV.P. 90, 274. Point of error 4(c) is overruled.

Appellant contends there was insufficient evidence to support the $14,160.00 attorney

fee award, which is excessive. We have already outlined the testimony concerning attorney fees. We find the finding is not contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Point of error five is overruled.

## PREJUDGMENT INTEREST

In his sixth point of error, appellant claims the trial court erred in awarding prejudgment interest on trebled damages.

The trial court sought to award appellee additional damages pursuant to TEX.INS.CODE ANN. art 21.21, § 16(b)(1) (Vernon Supp. 1993). In calculating additional damages, it is apparent that the trial court doubled the sum of actual damages and prejudgment interest. Appellee cites cases as authority for the correctness of this calculation. *See Celtic Life Ins. Co. v. Coats,* 831 S.W.2d 592 (Tex. App.—Austin 1992), *rev'd on other grounds,* 36 Tex.Sup.Ct.J. 1259, 1993 WL 343159 (Sept. 10, 1993). We cannot, however, ignore cases which hold that prejudgment interest is not to be included in additional damages awards pursuant to article 21.21 of the Texas Insurance Code. *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 137 (Tex.1988); *Hope v. Allstate Ins. Co.,* 719 S.W.2d 634, 638 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). The court in *Celtic Life Insurance Company v. Coats* found no conflict between *Vail* and *Paramore v. Nehring,* 792 S.W.2d 210 (Tex.App.1990, no writ), holding that the proper process for calculating treble damages under the DTPA without violating the prohibition of *Vail* is to: (1) calculate prejudgment interest on the amount of damages assessed in the verdict; (2) add prejudgment interest to the assessed damages to arrive at the total amount of actual damages; and (3) treble that sum as appropriate. *Celtic Life Ins. Co.,* 831 S.W.2d at 599. We respectfully disagree with our sister court. The holding of *Vail* is clear; the plaintiff was entitled to treble the amount of actual damages, with prejudgment interest on the amount of actual damages only. *Vail,* 754 S.W.2d at 130.

We modify the trial court judgment, reducing by $3,600.00 the $23,600.00 sum that was awarded pursuant to article 21.21, section 16(b)(1) of the Texas Insurance Code. Ac-

cordingly, we also reduce the attorney fee award by $1,440.00 (40% of $3,600.00).