FILED
17-0400
12/19/2017 3:34 PM
tex-21387540
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# No.17-0400

# In The Supreme Court of Texas

### STATE FARM LLOYDS,

*Petitioner/Cross-Respondent*

### v.

### DENNIS WEBB,

*Respondent/Cross-Petitioner*

*On Petition for Review from the*
*Ninth Court of Appeals—Beaumont, Texas*
*Cause No. 09-15-00408-CV*

# STATE FARM LLOYDS' RESPONSE TO PETITION FOR REVIEW

J. Hampton Skelton
Eva C. Ramos
Edward F. Kaye
**SKELTON & WOODY**
248 Addie Roy Road, Suite B-302
Austin, Texas  78746
512.651.7000 / 512.651.7001 fax

Melissa A. Lorber
**ENOCH KEVER PLLC**
5918 W. Courtyard Drive, Suite 500
Austin, Texas  78750
512.615.1200 / 512.615.1198 fax

***ATTORNEYS FOR STATE FARM LLOYDS***

# IDENTITY OF PARTIES AND COUNSEL

**Petitioner/Cross-Respondent:**

**State Farm Lloyds**

**Appellate & Trial Counsel:**

J. Hampton Skelton
Eva C. Ramos
Edward F. Kaye
**SKELTON & WOODY**
248 Addie Roy Road, Suite B-302
Austin, Texas  78746

**Appellate Counsel:**

Melissa A. Lorber
**ENOCH KEVER PLLC**
5918 West Courtyard Drive, Suite 500
Austin, Texas  78730

**Trial Counsel:**

David J. Fisher
**ORGAIN, BELL & TUCKER, LLP**
560 South 4th Street
Silsbee, Texas  77656

**Respondent/Cross-Petitioner:**

**Dennis Webb**

**Trial & Appellate Counsel:**

Gregory F. Cox
**MOSTYN LAW FIRM**
6280 Delaware Street
Beaumont, Texas  77706

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .......................................................... i

INDEX OF AUTHORITIES.......................................................................... iii

STATEMENT OF THE CASE....................................................................... iv

SUMMARY OF THE ARGUMENT ...................................................................1

ARGUMENT ...........................................................................................2

    I.      The court of appeals correctly applied the standard for legal-sufficiency review and correctly held that there is no evidence to support Dennis Webb's Insurance Code claims. ............................2

    II.    The record refutes Webb's claim that this case is "very much like" *State Farm Lloyds v. Nicolau.* ......................................................8

    III.    The court of appeals correctly applied this Court's decisions in *Viles v. Security National Insurance Co.* and *USAA Texas Lloyds Co. v. Menchaca* and Webb's criticisms are unclear and unpersuasive. ..................................................................11

PRAYER ...............................................................................................13

CERTIFICATE OF COMPLIANCE...............................................................14

CERTIFICATE OF SERVICE .....................................................................14

# INDEX OF AUTHORITIES

## CASES

*City of Keller v. Wilson*,
   168 S.W.3d 802 (Tex. 2005) ........................................................................ 1-3

*Lyons v. Millers Cas. Ins. Co. of Tex.*,
   866 S.W.2d 597 (Tex. 1993) ...........................................................................4

*State Farm Lloyds v. Nicolau*,
   951 S.W.2d 444 (Tex. 1997) ................................................................. 1, 8-11

*Transp. Ins. Co. v. Moriel*,
   879 S.W.2d 10 (Tex. 1994)................................................................... 3-4, 6

*Travelers Pers. Sec. Ins. Co. v. McClelland*,
   189 S.W.3d 846 (Tex. App.—Houston [1st Dist.] 2006, no pet.).......................9

*USAA Tex. Lloyds Co. v. Menchaca*,
   No. 14-0721, 2017 WL 1311752 (Tex. Apr. 7, 2017).............................. 1, 11-13

*Viles v. Sec. Nat'l Ins. Co.*,
   788 S.W.2d 566 (Tex. 1990) ...................................................................1, 3, 11

## STATEMENT OF THE CASE

| | |
|---|---|
| ***Nature of the Case and Parties:*** | Dennis Webb sued State Farm Lloyds for breach of contract and violation of the Texas Insurance Code, claiming that a plumbing leak caused foundation movement and cracked kitchen tiles, and that State Farm failed to adequately pay his homeowners insurance claim. |
| ***Trial Court:*** | Honorable Kent Walston in the 58th Judicial District Court of Jefferson County, Texas; Cause No. A–194,46. |
| ***Trial Court's Disposition:*** | After a jury trial, judgment was rendered for Webb on both the contract and Insurance Code claims.[1] |
| ***Court of Appeals:*** | Ninth Court of Appeals in Beaumont; Chief Justice McKeithen, joined by Justices Kreger and Horton; *State Farm Lloyds v. Webb,* No. 09-15-00408-CV, 2017 WL 1739763 (Tex. App.—Beaumont May 4, 2017, pet. filed) (mem. op.). |
| ***Court of Appeals' Disposition:*** | The court of appeals affirmed the judgment on the breach of contract claim, reversed and rendered judgment for State Farm on the Insurance Code claims, and remanded the attorney fees claim to the trial court.[2] |

---

[1]   The jury charge (CR 686-709) and final judgment (CR 798-802) are attached to State Farm's Petition as Appendix A & B.

[2]   The court of appeals' opinion on rehearing and judgment are attached to State Farm's Petition as Appendix C & D.

## SUMMARY OF THE ARGUMENT

Dennis Webb's petition ostensibly focuses on the standard of review applied by the court of appeals, but quickly descends into an attempt to pound the square peg represented by the facts of this case into the round hole of *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444 (Tex. 1997).[3] In making a strained comparison between the two cases, Webb's petition employs misleadingly selective quotations and misrepresents the record. Webb's ultimate goal—to resurrect liability for a "knowing" violation of the Texas Insurance Code—fails because it relies entirely on piling unwarranted inference upon unwarranted inference. Webb also takes failed shots at the court of appeals for relying on three of this Court's other cases,[4] all of which support the court's reversal of the jury's award of extra-contractual damages. The court of appeals correctly applied the standards for legal-sufficiency review in reviewing all the evidence, concluding that there is no evidence that State Farm had "no reasonable basis" for its claim decision, and thus holding that the record could not support extra-contractual liability. Webb's petition presents no error and no issue that warrants this Court's review.

---

[3]  Webb's Petition at 9 (claiming "*Nicolau* was a case very much like this one").

[4]  *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005); *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566 (Tex. 1990); *USAA Tex. Lloyds Co. v. Menchaca*, No. 14-0721, 2017 WL 1311752 (Tex. Apr. 7, 2017).

1

**ARGUMENT**

**I.    The court of appeals correctly applied the standard for legal-sufficiency review and correctly held that there is no evidence to support Dennis Webb's Insurance Code claims.**

Webb does not dispute that the court of appeals correctly stated the legal-sufficiency standard of review in its opinion, but Webb argues that the court improperly deviated from that standard. *Webb*, 2017 WL 1739763, at *8-10. He claims "the court of appeals discussed only evidence that would tend to show English's report was objectively prepared and that State Farm was reasonable in relying on it, and summarily disregarded the evidence that the jury heard." Webb's Petition at 7. The face of the court's opinion demonstrates otherwise. The opinion includes a detailed recitation of all of the evidence, including testimony Webb relies on in his petition for review. *Webb*, 2017 WL 1739763, at *2-6. That the court did not restate all the evidence for a second time in addressing the sufficiency of the evidence is no indication of error.

More critically, Webb ignores this Court's articulation of the appellate court's task in *City of Keller v. Wilson:*

> The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. Whether a reviewing court begins by considering all the evidence or only the evidence supporting the verdict, legal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.

2

168 S.W.3d 802, 827 (Tex. 2005). That is precisely what the court of appeals did.

Though Webb offered innuendo and accusation that State Farm's claim investigation was outcome oriented and its reliance on Brandon English's expert report was pretextual, the court reviewed the trial record and concluded that Webb had offered no *evidence* supporting the bad faith verdict.

Webb's argument that the court of appeals should have only discussed evidence that supported Webb's position, while ignoring the evidence supporting State Farm's position, is nonsensical in the review of an insurance bad faith claim—which requires evidence that an insurer's liability on a claim was "reasonably clear" and provides that evidence establishing a "bona fide dispute" cannot support a finding of bad faith. As this Court has explained:

> Evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. Nor is bad faith established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy. A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith. To the contrary, an insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact.

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 17-18 (Tex. 1994) (internal citations omitted). This standard necessarily requires evaluation of all the evidence: "Whether there is a reasonable basis for denial, however, must be judged by the facts before the insurer at the time the claim was denied." *Viles v. Sec. Nat'l Ins.*

3

*Co*., 788 S.W.2d 566, 567 (Tex. 1990). The court of appeals correctly reviewed all the evidence available to State Farm and held that "[b]ecause the evidence merely shows a bona fide dispute about State Farm's liability on the contract, it does not support a judgment for bad faith." *Webb*, 2017 WL 1739763, at \*9 (citing *Moriel,* 879 S.W.2d at 17-18). There is no error and no legal question that warrants this Court's attention.

The court of appeals weighed the evidence under the proper legal standard. *Id.* at \*8-9. To support his bad faith claim, Webb was required to present evidence demonstrating more than a "disagreement among experts concerning whether the cause of the loss is covered by the policy"—he was required to show that, despite State Farm's engineering expert opining that Webb's cracked kitchen tiles were not caused by a covered peril, State Farm nonetheless "had no reasonable basis to delay or deny payment of the claim." *See id*. at \*8 (quoting *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993)). And the court of appeals correctly concluded that "Webb offered no evidence showing that the [expert's] report … was not objectively prepared or that State Farm's reliance on the report was not reasonable" and, thus, failed to meet that burden. *Id*. at \*9.

The record establishes that English's investigation was thorough and that he based his conclusion on objective data, including elevation surveys by three engineers over a several-year period: (1) a survey after Hurricane Ike in 2009;

4

(2) English's survey done a few weeks after the leak was discovered and repaired in 2012; and (3) the survey by Webb's litigation expert, Peter Rabner, in 2014. 5 RR 183-86. All three surveys indicated no appreciable movement in the foundation. 5 RR 182-86. Had the leak caused foundation movement, there would have been evidence of heave on the post-leak elevation surveys—a noticeable change from the pre-leak survey. 5 RR 89-90, 119-20, 130, 133, 182-86. Even Rabner admitted that there *should* have been a pattern of greater distress closest to the source of the water intrusion. 3 RR 230-31. But that pattern was not present at Webb's house. 5 RR 130, 132-33.

English explained why he disagreed with Rabner's improbable opinion that the foundation had rapidly heaved up, then quickly moved back down, all undetected by the elevation studies. English explained:

- had that occurred, there would have been diagonal cracks in the door, affected soffit or trim, or cracked brick (5 RR 160-64);

- the grout surrounding the purportedly recently cracked tiles had no cracks and the cracks skipped tiles in places (5 RR 134-35, 137-40);

- this was consistent with Webb's own testimony that—after the last hurricane, and long before the leak—he had replaced a few, but not all, of the cracked tiles because he lacked enough matching tiles to replace every one that had cracked (3 RR 22).

In short, English's opinions were well grounded in data and objectively known facts[5] and could reasonably have been relied on by State Farm during its claim

---

[5]   Webb's expert, Rabner, testified that he did not doubt English's data was accurate. 3 RR 228.

investigation. The fact that Webb's engineer (hired by the Mostyn firm during litigation, almost two years after the leak) had a different trial opinion than English is unsurprising and no indication of bad faith. *See Moriel,* 879 S.W.2d at 17-18 ("A simple disagreement among experts about whether the cause of the loss is one covered by the policy will not support a judgment for bad faith.").

Webb argues that "an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial." Webb's Petition at 9. But while this statement of law is correct, Webb's petition fails to point to any evidence that English's investigation was "outcome-oriented" or that his conclusions were biased. To the contrary, English refuted this accusation with unimpeached testimony:

> Q. Now, … has State Farm ever told you, in connection with this case or any other case, before you went and did your investigation – have they ever told you what result they would like to see?
>
> A. No, sir.
>
> Q. Have you ever had that happen?
>
> A. No, sir.
>
> Q. Did it happen in this case?
>
> A. No, sir.
>
> Q. What would … you do if an insurance company said something like that to you?
>
> A. I wouldn't work for 'em again.
>
> Q. Would you work for 'em on that particular assignment?
>
> A. No, not – including that. I would never work for 'em.
>
> Q. And why is that?

A. I've worked too hard at this; and, in 17 years, I'm not gonna throw it away 'cause they want me to. It's not worth it.

***

Q. Are you aware of your company ever doing anything of that nature, going out to investigate a claim with a predetermined result?

A. No, sir.

5 RR 108-10. This unchallenged testimony is evidence. The unsupported innuendo in Webb's petition is not.

Additionally, Webb suggests that English's opinions must have been biased because "State Farm has a very short list of carefully vetted engineers that it uses for foundation claims, and the firms on the list derive a substantial portion of their income from State Farm." Webb's Petition at 3 (citing 4 RR 20-21; 5 RR 236). Even if it were true that State Farm uses only a "short list" of engineers and provides a "substantial portion" of their income, Webb has demonstrated no causal link to establish that any of the engineers—and particularly English—offer biased or otherwise unprofessional opinions. And additionally Webb's accusation is not supported by the record. State Farm claims supervisor Ernest Perez instead testified there was a list of 8 to 10 engineering firms for claims personnel to use on a rotational basis. 4 RR 31-32. English testified that State Farm provided about 20% of the work of HSA's Houston office, but HSA was part of a larger national firm. 5 RR 101, 235-36. English further testified that he lives in Kansas City and

no longer does much State Farm work. 5 RR 101, 236. This evidence does not support Webb's claim of bias.

Webb also takes issue with the fact that State Farm's engineer did not provide Webb with a definitive cause of the damages to his home—an argument that misperceives English's role. English was not hired to determine why tiles had cracked: his sole assignment was to determine if there was a covered loss, which in this case meant determining if the plumbing leak had caused the foundation to heave, which is the only circumstance under which the insurance policy would provide coverage for foundation damage. 5 RR 227.[6]

The court of appeals correctly concluded that the evidence merely shows a bona fide dispute about State Farm's liability on the insurance policy and did not establish that State Farm had no reasonable basis for denying payment of Webb's claim.

## II. The record refutes Webb's claim that this case is "very much like" *State Farm Lloyds v. Nicolau.*

Webb's efforts to compare this case to *Nicolau* are unavailing. *Nicolau* turned on evidence that State Farm's claims supervisor had hired an engineer with awareness that this engineer held a "general opinion" that a localized leak beneath a house would not cause foundation movement. This Court wrote:

---

[6] As the court of appeals recognized, "[a]ccording to English, the focus of his investigation was to determine whether the foundation moved as a result of the leak and not to determine what caused the tiles to crack." *Webb*, 2017 WL 1739763, at \*4.

David Teasdale, a Haag engineer since his graduation from college in 1985, provided evidence that a substantial amount of Haag's work is done for insurance companies; Teasdale estimated that eighty to ninety percent of his work consisted of investigations for insurance companies. He also testified that he was aware that an insurance company would be required to pay if a policyholder's home were damaged by a leak.

Furthermore, the evidence supports a logical inference that State Farm obtained the reports from Haag Engineering because of Haag's general view that plumbing leaks are unlikely to cause foundation damage. State Farm's claim superintendent, Ralph Cooper, testified that he was aware of Haag's view when he requested the first report.

951 S.W.2d at 448. Even so, the Court held that "[s]tanding alone, this [type of] evidence would not always be evidence of bad faith. All experts presumably have certain general views and expertise, and an insurer's mere awareness of such views is not necessarily an indication of bad faith." *Id.* at 449.[7] But there was additional evidence that tipped the scales in favor of upholding a bad faith finding in *Nicolau,* including: (1) Nicolaus' repair contractor testified that he had reviewed nearly 100 Haag reports, but found only two times Haag had found plumbing leaks to have been the cause of foundation damage; and (2) even State Farm's own experts testified they disagreed with some of Haag's conclusions and that one conclusion about moisture content of a soil sample "was unreasonable." *Id.* at 450.

---

[7] The import of the *Nicolau* decision is that "in order to show bad faith, the evidence must show behavior more egregious than merely hiring a firm whose reports generally feature an outcome favored by its recipient." *See Travelers Pers. Sec. Ins. Co. v. McClelland,* 189 S.W.3d 846, 853-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

9

While the evidence in *Nicolau* was held to be sufficient to support a finding of bad faith, there is no comparable evidence here. Webb implies that because English worked at Haag many years ago, he must be biased. But Webb cannot point to any evidence of a "general view" held by English that would favor insurers, much less affect the causation opinion he gave in this case. English directly refuted the accusation, testifying that plumbing leaks *can* cause foundation movement: "[T]he premise is that if water introduces into that clay and the clay swells, it can swell enough to move a foundation. It's always that. That's the potential." 5 RR 124. English testified that he was open to the possibility that a plumbing leak can cause a foundation to move. 5 RR 124, 215. He further made clear that he would not work on any assignment from an insurance company if that company dictated what the engineering conclusions should be. 5 RR 108-10.

The premise that since State Farm was found in *Nicolau* to have committed bad faith on a claim in Corpus Christi in 1990 and, purportedly "changed nothing" since, so it must have acted in bad faith on Webb's 2012 claim, suffers from fatal factual, logical, and legal flaws. Putting aside the fact that the *Nicolau* line of questioning should have never been permitted, there is no evidence supporting Webb's contention that State Farm "changed nothing" since *Nicolau.* It is an outright misrepresentation of the record for Webb to contend that State Farm claim

10

supervisor, Perez, admitted that State Farm "changed nothing." Perez instead testified that it was so long ago that he did not know:

> Q. After the Supreme Court came down and said whatever problems happened in that *Nicolau* case happened, did those of you working at State Farm with these foundation claims and these plumbing leak claims and these same engineers – did y'all go and change your policies, practices, and procedures?
> A. I don't recall if we did or not, sir. That was so many years ago, I don't know that we changed any of our handling procedures because of that case.

4 RR 30. *Nicolau* does not aid Webb and, in fact, demonstrates Webb's failure to meet his evidentiary burden in this case.

## III. The court of appeals correctly applied this Court's decisions in *Viles v. Security National Insurance Co.* and *USAA Texas Lloyds Co. v. Menchaca* and Webb's criticisms are unclear and unpersuasive.

Apparently trying to create some legal issue that could warrant this Court's review, Webb criticizes the court of appeals' discussion of this Court's decisions in *Viles* and *Menchaca*. But neither argument is comprehensible or persuasive.

In *Viles*, this Court explained: "Whether there is a reasonable basis for denial, however, must be judged by the facts before the insurer at the time the claim was denied." 788 S.W.2d at 567. The court of appeals appropriately cited *Viles* for the same standard: "In determining whether the insurer had a reasonable basis to deny a claim, we review the facts available to the insurer at the time of the denial." *Webb*, 2017 WL 1739763, at *8. Webb curiously argues that "*Viles* does

11

not say that an insurer can ignore information obtained after it denies a claim, or that its duty of good faith ends upon denial of the claim, and that is not the law." Webb's Petition at 16. But nothing in the court of appeals' opinion implies that an insurer can or should ignore information it learns after denial of a claim. And nothing in the record indicates that State Farm did.

Similarly, the court of appeals cited *Menchaca* for its holding that "the insurer's statutory violation does not permit the insured to recover any actual damages beyond … policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Webb*, 2017 WL 1739763, at *9 (quoting No. 14-0721, 2017 WL 1311752, at *12 (Tex. Apr. 7, 2017)). The court then explained that its review of the record "show[ed] that Webb only sought to obtain the benefits of the policy he had with State Farm, and Webb presented no evidence showing that State Farm's alleged statutory violations caused an injury that was independent from the loss of benefits under the policy." *Id*. Webb seems to acknowledge that the court of appeals did not misconstrue *Menchaca*. But his petition criticizes the court for mentioning it at all: "The opinion appears to say that Webb was not entitled to recover damages that he did not seek and the jury did not award, but if that is all the court intended, the whole discussion would be meaningless to any issue on appeal." Webb's Petition at 17. While it is unclear

what Webb's complaint is, the court of appeals' correct discussion of *Menchaca* does not warrant this Court's review.

## PRAYER

State Farm respectfully requests this Court deny the relief requested by Webb, and, as stated in State Farm's Petition for Review, reverse the court of appeals' judgment and render a take-nothing judgment in favor of State Farm.

Respectfully submitted,

By: */s/ J. Hampton Skelton*

J. Hampton Skelton
  State Bar No. 18457700
  hskelton@skeltonwoody.com
Eva C. Ramos
  State Bar No. 20143100
  eramos@skeltonwoody.com
Edward F. Kaye
  State Bar No. 24012942
  ekaye@skeltonwoody.com
**SKELTON & WOODY**
248 Addie Roy Road, Suite B-302
Austin, Texas 78746
512.651.7000 / 512.651.7001 fax

Melissa A. Lorber
  State Bar No. 24032969
  mlorber@enochkever.com
**ENOCH KEVER PLLC**
5918 W. Courtyard Drive, Suite 500
Austin, Texas  78730
512.615.1200 / 512.615.1198 fax

*ATTORNEYS FOR PETITIONER/*
*CROSS-RESPONDENT STATE FARM LLOYDS*

## CERTIFICATE OF COMPLIANCE

Petitioner/Cross-Respondent State Farm Lloyds certifies that this Response to Petition for Review (when excluding the caption, table of contents, index of authorities, statement of the case, signature, certificate of compliance, and certificate of service) contains 3,214 words.

*/s/ J. Hampton Skelton*
J. Hampton Skelton

## CERTIFICATE OF SERVICE

I certify that on December 19, 2017, this Response to Petition for Review was served on the following counsel of record via electronic filing service:

Gregory F. Cox
Mostyn Law Firm
6280 Delaware Street
Beaumont, Texas 77706

*/s/ J. Hampton Skelton*
J. Hampton Skelton